**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-

BRANDON SMITH, and

DONALD HICKMAN,

individuals, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FRONT RANGE TRANSPORTATION LLC, dba FRONT RANGE SHUTTLE AND
TOURS, a Colorado limited liability company, and

COREY WATSON, an individual,

Defendants.

---

## COMPLAINT

---

Plaintiffs Brandon Smith ("Smith"), and Donald Hickman ("Hickman")

(collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated, by and

through undersigned counsel, hereby complain as follows:

## <u>NATURE OF THE ACTION</u>

1. This action is brought on behalf of all individuals employed as drivers by

Defendants Front Range Transportation LLC, dba Front Range Shuttle and Tours

("FRS") and or Corey Watson ("Watson") within the state of Colorado within the last

three years.

2.      Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the applicable Colorado Minimum Wage Order ("CMWO"), 7 Colo. Code Regs. §1103-1, by failing to pay drivers compensation for (i) all hours worked at their regular rates of pay, and (ii) for overtime hours at the overtime rates of pay.

3.      Plaintiffs also bring individual and class claims under Internal Revenue Code 29 U.S.C. § 7434 ("IRC") based on Defendants' willful filing of fraudulent tax information.

4.      Plaintiffs also allege that Defendants violated the CWPA by making improper deductions from their earned wages, and/or requiring them to reimburse Defendants for alleged damages to FRS company vehicles.

5.      Plaintiffs also allege that Defendants violated the Colorado Wage Protection Act ("CWPA") and the CMWO by unlawfully keeping customers' tips and gratuities.

6.      Finally, Plaintiffs allege that Defendants unjustly enriched themselves by failing to pay them regular and overtime compensation as required by law, and by misclassifying them as independent contractors and unlawfully failing to withhold and pay applicable federal and state income taxes on their compensation.

## JURISDICTION AND VENUE

7.      Jurisdiction over Plaintiffs' FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8.      Jurisdiction over Plaintiffs' IRC claims is based upon 29 U.S.C. § 7434 and 28 U.S.C. § 1331.

9.     Jurisdiction over Plaintiffs' state law claims is based upon 28 U.S.C. § 1367

because they are so related to their FLSA and IRC claims that if forms part of the same

case or controversy.

10.    Defendants are subject to personal jurisdiction in Colorado because they

conduct substantial business in this state and the acts and omissions alleged herein

occurred in this state.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a

substantial part of the events or omissions giving rise to the claims occurred in this

District.

## THE PARTIES

12.    Plaintiffs were, at all relevant times, adult individuals residing in Colorado.

13.    Plaintiffs were employed by Defendants in Colorado Springs, Colorado as

drivers of multi-passenger vans and other vehicles.

14.    FRS  was formed on July 26, 20111. Watson is its registered agent and sole

owner.  FRS' office and principal business address is 2309 Rand Avenue, Colorado

Springs, CO 80905.

## General Allegations

15.    Plaintiffs incorporate all prior paragraphs and incorporates them herein.

16.    FRS provides scheduled shuttle transportation to and from the Colorado Springs

Airport (COS) and Denver International Airport (DIA), and also to and from Pueblo to

COS and DIA.  FRS also provides executive car and private van service (private

transportation) to and from the same locations.

17.    Upon information and belief, FRS previously and currently employs a total at least 15 individuals as drivers.

***Hickman's employment***

18.    Hickman started working for FRS in June 2014.  He was paid an hourly rate and classified as a W-2 employee with proper tax withholding.

19.    In May 2015, Defendants changed Hickman's classification to 1099 independent contractor ("IC").  There was no change in Hickman's job duties.

20.    Upon information and belief, Defendants made all drivers ICs at that time.  There was no change in their job duties.

21.    Hickman received an IRS Form W-2, and an IRS Form 1099-MISC, from FRS for tax year 2015.

22.    In February 2016, Defendants switched Hickman's classification back to W-2 employee.  Again, there was no change in Hickman's job duties.

23.    In March 2016, Hickman was involved in an accident while driving a company vehicle during a snowstorm.  Defendants required Hickman to pay a total of $840 for repairs to the vehicle.  Hickman paid this amount to Defendants by personal check in $100 installments.

24.    In August 2016, Hickman complained to Defendants about his compensation, including Defendants' prior misclassification of him as an IC.

25.    On or about September 6, 2016, Defendants changed Hickman's regular work schedule of at least three (3) days per week to a "floater".  Since then, Defendants only occasionally schedule Hickman to work.

26.     Defendants thereafter gave Smith the same work schedule that Hickman

previously worked.

***Smith's employment***

27.     Before becoming a driver, Smith worked for Defendants as a dispatch employee

from October 2015 to February 2016.  For these duties, Defendants paid him a regular

hourly rate with proper W-2 tax withholding.

28.     After a break in employment, Smith returned to FRS to begin driving in mid-July

2016.

29.     At that time, Watson told Smith that he would earn more as an independent

contractor, and misclassified him as an IC.

30.     Smith received an IRS Form W-2, and an IRS Form 1099-MISC, from FRS for

tax year 2016.

31.     Smith voluntarily terminated his employment with FRS on January 11, 2017.

***Plaintiffs' work hours and schedules for COS-DIA roundtrips***

32.     Defendants directed and scheduled Plaintiffs to drive six (6) round-trip routes to

and from COS to DIA each day.  An example of that schedule is attached hereto as

Exhibit 1.

33.     The duration of each round trip, according to the schedule (and not accounting

for any unexpected delays due to traffic or weather conditions) is 5 hours and 15

minutes.  Drivers drive 2 hours and 15 minutes from COS to DIA with four (4) stops.

Assuming no delays, they may have as much as 45 minutes waiting to begin the return

trip.  During that time, they cannot leave the vehicle or passengers unattended, and

have no time to go the bathroom, or otherwise take a rest or meal period.  The return trip from DIA to COS is also scheduled to be 2 hours and 15 minutes.

34.     Defendants typically scheduled Plaintiffs to drive two (2) round-trip routes per each scheduled workday.

35.     Until Defendants made him a "floater", Hickman usually worked Mondays, Tuesdays, and Wednesdays, and drove Routes 3 and 6.  Smith took over Hickman's schedule after that.

36.     Plaintiffs began each workday by arriving at the FRS office at 8:15 a.m.  During that period, they would interact with dispatch and other FRS office employees, sometimes get the van washed, get his keys and a tablet computer provided by FRS to track scheduled passengers and other details.  They would then drive from FRS to COS to pick up passengers for the beginning of Route 3, leaving COS at 9:00 a.m.

37.     After completing the Route 3 round trip, arriving at COS at 2:15 p.m., Plaintiffs had until 4:00 p.m. to begin driving Route 6.  However, during the period between the end of Route 3 and the beginning of Route 6, they would drive back to the FRS office, where they remained from 2:30 p.m. to 3:30 p.m.  During this period, they were not fully relieved of work duties, and instead were required to complete paperwork, get the van washed, interact with dispatch and other office employees, and other duties.

38.     Beginning at 3:30 p.m., Plaintiffs would drive back to COS and pick up passengers for Route 6.  They would complete Route 6 at 9:15 p.m.  They would then drive back to the FRS office, turn in the keys and tablet and complete any remaining tasks, and end their work day.

25.    The total duration of this average workday for Plaintiffs and other drivers is thus from 8:15 a.m. to 9:30 p.m., over 13 hours.

39.    Defendants paid Smith and other IC drivers a flat rate of $65 for each round trip from COS to DIA.  Defendants thus paid the drivers $130 per day when they drove two Routes.

### Additional Pueblo-COS roundtrips

26.    FRS also runs as many as five (5) round-trip routes daily to and from Pueblo to COS.

27.    FRS required Plaintiffs and other drivers to add a Pueblo roundtrip from COS to the beginning and end of each day.  Thus, Plaintiffs' workday started at 7:15 at FRS, they drove to Pueblo and back, before starting Route 3.  Then, at the end of Route 6, they would drive to Pueblo and back again, ending their workday at 11:00 p.m.  The total duration of that workday is thus 15 hours and 45 minutes.

40.    In late October 2016, Defendants also added a mid-day Pueblo run.  Plaintiffs and other drivers were now expected to squeeze a third Pueblo roundtrip during the period between Schedules 3 and 6.  Thus, Plaintiffs and other drivers had no break whatsoever for the entire workday.

41.    Defendants paid Smith and other IC drivers another $25 for additional Pueblo runs at the beginning and end of each day.

42.    However, Defendants did not pay Smith and the other IC drivers any additional compensation for mid-day Pueblo runs.

43.     Defendants did not pay Plaintiffs and other IC drivers any overtime for hours worked in excess of twelve (12) in a single workday or more than forty (40) in a single workweek.

***Illegal Tip Ownership***

44.     At all relevant times, FRS passengers gave Plaintiffs and other drivers tips. Some paid these tips either in cash handed in person to Plaintiffs and other drivers upon arrival at their destination.  Other passengers paid these tips by including them as an addition to their online reservation payment to FRS for the trip.  Still other passengers paid these tips by calling FRS to add them to their invoice.

45.     On December 15, 2016, Defendants announced and distributed a new written policy applicable to "all employees and contractors", entitled the "Front Range Shuttle Safety Award Program".  A copy of the policy is attached as Exhibit 2.

46.     The policy states that drivers will still keep any cash tips or credit card tips received by passenger card swipe at the time of sale.  However, Defendants now assert ownership of all online reservation tips and call-in tips, which are collected in the "Front Range Shuttle safety fund".

47.     According to Defendants' policy, this "safety fund" will be used for repairs of "preventable" damage to company property.  The balance of unused funds will be distributed annually on December 15th to employees who "qualify for the year end safety award program."

48.     In order to "qualify", each employee or contractor "must NOT have had any preventable accident or damage"; or if so, they reported same verbally and in writing to Defendants within 12 hours and the damages was less than $500 in repairs.

49.     Upon information and belief, Defendants did not post a notice to the public regarding tip ownership, as required by Colo. Rev. Stat. § 8-4-103(6).

### *Meal and break periods*

50.     Throughout their employment by Defendants, Plaintiffs frequently work(ed) through their meal periods and/or took meal periods that were shorter than 30 minutes. At all relevant times, Defendants were aware of this.

51.     Throughout their employment by Defendants, Plaintiffs did not and/or were not able or permitted to take breaks of at least 10 minutes every 4 hours. At all relevant times, Defendants were aware of this.

### *Defendants' control of Plaintiffs' employment*

52.     Examples of the control Defendants exercised over Plaintiffs include the following:

    a.    Defendants established and set the schedule and hours that Plaintiffs were required to work;

    b.    Defendants established and set the locations at which Plaintiffs were required to work;

    c.    Defendants provided all of the equipment and supplies by which Plaintiffs performed their work, including the vehicles, radios, and tablet computers;

    d.    Defendants created and adopted personnel and other policies that Plaintiffs were expected to follow.

53.     At all relevant times, Plaintiffs and other IC drivers did not operate an independent business entity or conduct business under a registered trade name.

54.     At all relevant times, Defendants paid Plaintiffs and other IC drivers for the work they performed by checks made payable to their personal names.

55.     At all relevant times, Defendants did not have any written IC agreements with Plaintiffs and other IC drivers that complied with Colo. Rev. Stat. §§ 8-40-202(2)(b)(IV) and 8-70-115(2).

## FLSA COLLECTIVE ACTION ALLEGATIONS

56.     Plaintiffs incorporate all prior paragraphs and incorporates them herein.

57.     Plaintiffs seek to prosecute their FLSA claims as an "opt-in" collective action on behalf of all persons who are or were employed by Defendants as Drivers at any time in the last three (3) years to the entry of judgment in this case and to whom Defendants:

      a. Failed to pay compensation at the proper regular rate of pay for all hours the Drivers worked;

      b. Failed to pay overtime at the proper regular rate of pay for all hours the Drivers worked in excess of 12 hours in a single day, and/or 40 hours in a workweek; and

      c. Misclassified as ICs and failed to pay the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes.

(hereinafter the "FLSA Collective Action Class")

58.     Plaintiffs will fairly and adequately protect the interests of the members of the FLSA Collective Action Class and have retained counsel who is experienced and competent in the fields of wage and hour law and class action litigation. Plaintiffs have no interest contrary to or in conflict with the members of this collective action.

59.     The members of the FLSA Collective Action Class are similarly situated because, among other things, they were all victims of the same employer-wide policies and procedures that failed to pay them all the wages to which they are entitled under the FLSA.

## CLASS ALLEGATIONS – Federal IRC and Colorado State Law Claims

60.     Plaintiffs incorporate all prior paragraphs and incorporates them herein.

61.     Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure.

62.     Plaintiff bring their federal IRC Claims on behalf of all persons who were employed by Defendants in the State of Colorado at any time in the last six (6) years, and regarding whom Defendants willfully filed a fraudulent information return with respect to compensation paid to them ("Tax Fraud Class").

63.     Plaintiffs bring their Colorado state law (CWPA, CMWO, and unjust enrichment) claims on behalf of all persons who were employed by Defendants in the State of Colorado at any time in the last three (3) years to the entry of judgment in this case who held the position of Driver and who Defendants failed to:

    a.     pay any compensation for all hours worked ("Colorado Regular Pay Class"); and/or

    b.     pay overtime at the proper regular rate of pay ("Colorado Overtime Pay Class"); and/or

    c.     provide at least a 30-minute uncompensated meal period ("Colorado Meal Period Class"); and/or

    d.     provide paid 10-minute breaks at least every four (4) hours ("Colorado Break Time Class").

(collectively the "Colorado Classes").

64. The members of the Colorado Classes and the Tax Fraud Class are so numerous that joinder of them is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number of presently within the sole control of Defendants, upon information and belief, there are at least 50 members of the Colorado Classes and Tax Fraud Class.

65. Plaintiffs' claims are typical of the claims of the members of the Colorado Classes and the Tax Fraud Class. Plaintiffs performed the same job as the members of the Colorado Classes; Defendants paid Plaintiffs and the members of the Colorado Classes pursuant to the same policies and procedures; and Plaintiffs and the members of the Colorado Classes were victims of the same wrongful conduct by Defendants in violation of the IRC, CWPA, and CMWO.

66. The class action mechanism is superior to any alternatives which might exist for the fair and efficient adjudication of this cause of action. Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Moreover, class treatment is the only realistic means by which Plaintiffs can effectively litigate against Defendants in this matter. Numerous repetitive individual actions would also place an enormous burden on the courts as they are forced to take duplicative evidence and repeatedly decide the same issues relating to Defendants' conduct.

67.     Defendants have acted or refused to act on grounds generally applicable to the Colorado Classes and the Tax Fraud Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Colorado Classes and the Tax Fraud Class as a whole.

68.     Plaintiffs are committed to pursuing this action and have retained competent counsel who is experienced in wage and hour law and class action litigation.

69.     Plaintiffs will fairly and adequately protect the interests of, and have no interest contrary to or in conflict with, the members of the Colorado Classes and the Tax Fraud Class.

70.     There are questions of law and fact common to the Colorado Classes and the Tax Fraud Class which predominate over any questions solely affecting any individual members, including but not limited to:

     a.    Whether Defendants willfully filed fraudulent information returns with respect to Defendants' payments to members of the Tax Fraud Class;

     b.    whether Defendants employed the members of the Colorado Classes within the meaning of the CWPA and the CMWO;

     c.    whether Defendant's policies and practices described within this Complaint are illegal under the CWPA and the CMWO;

     d.    whether Defendants failed and/or refused to pay the members of the Colorado Classes for all regular hours worked at their proper rates of pay;

     e.    whether Defendants failed and/or refused to pay the members of the Colorado Classes for hours worked in excess of forty (40) hours per workweek and/or twelve (12) hours in a single workday within the meaning of the CMWO;

     f.    what proof of hours worked is sufficient where Defendants failed in their duty to maintain time records; and

g.      whether Defendants are liable for all damages claimed hereunder.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT – COLLECTIVE ACTION vs. FRS**

71.      Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

72.      FRS has been and is engaged in interstate commerce within the meaning of the FLSA.

73.      FRS employed and/or employs each of the members of the FLSA Collective Action Class within the meaning of the FRS.

74.      FRS had and has gross revenues in excess of $500,000.

75.      Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b). A copy of the Plaintiffs' written consents is attached as Exhibit 3.

76.      FRS had and has a policy and practice of failing to permit or ensure that Drivers took at least a 30-minute meal period during which they were fully relieved of all duties. As a result, FRS failed to pay additional wages for these periods.

77.      FRS had and has a policy and practice of failing to permit or ensure that Drivers took at least one 10-minute break for every 4 hours of work, during which they were fully relieved of all duties. As a result, FRS failed to pay additional wages for these periods.

78.      FRS had and has a policy and practice of failing to pay Drivers compensation for all hours worked at their proper regular rates of pay.

79.      FRS had and has a policy and practice of failing to pay Drivers overtime compensation at the proper rate of pay for all hours worked in excess of forty (40) hours per workweek and/or twelve (12) hours in a single workday.

80.   The foregoing conduct, as alleged, constitute willful violations of the FLSA within the meaning 29 U.S.C. § 255(a).

81.   Due to FRS' FLSA violations, Plaintiffs, on behalf of themselves and  the FLSA Collective Action Members, are entitled to recover from FRS all unpaid regular and overtime compensation, plus actual and liquidated damages, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees, costs, and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT – COLLECTIVE ACTION vs. Watson**

82.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

83.   As the owner of FRS, Watson had and has direct responsibility for the day-to-day business of FRS, including supervising employee work schedules, controlling employee conditions of employment, determining the rate and method of payment of employees, and maintaining employment records.

84.   Watson had and has authority to hire and fire FRS employees.

85.   Watson thereby acted directly and indirectly in the interest of FRS as an employer, in relation to the Plaintiffs and other Drivers as employees. Watson is thus an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

86.   As an employer, Watson willfully violated the FLSA through the policies and practices of FRS described above.

87.   Due to Watson's FLSA violations, Plaintiffs, on behalf of themselves and the FLSA Collective Action Members, are entitled to recover from Watson personally all

unpaid regular and overtime compensation, plus actual and liquidated damages,

including the employer's share of FICA, FUTA, state unemployment insurance, and any

other required employment taxes, reasonable attorneys' fees, costs, and

disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**THIRD CLAIM FOR RELIEF**
**COLORADO MINIMUM WAGE ORDER – CLASS ACTION**

88. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

89. Defendants willfully violated the applicable CMWO, 7 Colo. Code Regs

§ 1103-1, paragraph 7, by failing and/or refusing to provide Plaintiffs and members of

the Colorado Classes with an uninterrupted and "duty free" meal period of at least thirty

minutes for all scheduled work shifts that exceeded five consecutive hours of work.

90. Defendants willfully violated the applicable CMWO, 7 Colo. Code Regs

§ 1103-1, paragraph 8, by failing and/or refusing to authorize and permit Plaintiffs and

members of the Colorado Classes to take rest periods of 10 minutes for each four (4)

hour work period.

91. As a result of Defendants' nonpayment of compensation to Plaintiffs for all

regular hours worked, and overtime as applicable, and also the meal and rest period

violations described above, Plaintiffs received less than the legal minimum wage.

92. Plaintiffs are entitled to recover the unpaid balance of the full amount of such

minimum wage, together with reasonable attorney fees and court costs, pursuant to

Colo. Rev. Stat. § 8-6-118.

## FOURTH CLAIM FOR RELIEF
## <u>INTERNAL REVENUE CODE – CLASS ACTION</u>

93.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

94.     Section 7434 of the Internal Revenue Code provides "[i]f any person willfully files a fraudulent information return with respect to payment purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return" 26 U.S.C §7434(a).

95.     26 U.C.C. § 7434(f) provides that the term "information return" means any statement described in 26 U.S.C. § 6724(d)(1)(A).

96.     A Form 1099-MISC is an information return pursuant 26 U.S.C §6724(d)(1)(A)(i).

97.     Defendants filed a fraudulent Form 1099-MISC with respect to payments purportedly made to Plaintiffs as independent contractors.

98.     Defendants' fraudulent filing of Forms 1099-MISC regarding payments purportedly made to Plaintiffs was willful, because Defendants knew that Plaintiffs were employees and not independent contractors.

99.     Based on Defendants willful and fraudulent filing of Plaintiffs' Form 1099-MISC, they are liable to Plaintiffs in an amount equal to the greater of $5,000 or the sum of any actual damages sustained by each and every Plaintiff as a result of such filing, the costs of this action, and reasonable attorneys' fees. 26 U.S.C. § 7434(b).

**FIFTH CLAIM FOR RELIEF**
**COLORADO WAGE PROTECTION ACT – CLASS ACTION**

100.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

101.    Defendants willfully violated Colo. Rev. Stat. § 8-4-105 by making unlawful deductions from the wages of Plaintiffs and other employees.

102.    Defendants willfully violated Colo. Rev. Stat. § 8-4-103(6) by asserting ownership of employees' tips or gratuities.

**SIXTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT – CLASS ACTION**

103.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

104.    Defendants failed to withhold amounts from Plaintiffs' wages to pay applicable Federal Insurance Contributions Act (FICA) taxes, and failed to forward such amounts to the Internal Revenue Service.

105.    Defendants also failed to pay the employer's portion of the applicable Federal Insurance Contributions Act (FICA) taxes, and failed to pay such amounts to the Internal Revenue Service.

106.    Defendants also failed to pay Colorado unemployment taxes on part or all of Plaintiffs' wages.

107.    Defendants thereby unjustly enriched themselves by avoiding these federal and state tax payments.

108.    Because of Defendants' unjust enrichment of themselves, Plaintiffs were damaged by the amounts that Defendants failed to pay to the Internal Revenue Service for contribution to their Social Security retirement benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other members of the FLSA Collective Action Class, the Tax Fraud Class, and the Colorado Classes, respectfully request that this Court grant the following relief:

a.      Designation of this action as a collective action on behalf of the members of the FLSA Collective Action Class and prompt issuance of notice pursuant to 29 U.S.C.§ 216(b) to all similarly situated members of the FLSA Collective Action Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b.      Certification of Plaintiffs' federal IRC and Colorado state law (CWPA, CMWO, and unjust enrichment) claims as a Class Action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), and prompt issuance of notice to class members pursuant to Rule 23(c)(2).

c.      A declaratory judgment that the policies and practices complained of herein are unlawful under the FLSA, the IRC, the CWPA, and the CMWO;

d.      An injunction requiring Defendants to cease their unlawful practices under, and to comply with, the FLSA, the IRC, the CWPA, and the CMWO;

e.      An award of regular compensation due under the FLSA and the CMWO;

f.      An award of overtime compensation due under the FLSA, the CWPA, and the CMWO;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay regular and overtime compensation pursuant to 29 U.S.C. § 216;

h.      An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

i.      Judgment against Defendants for willful and fraudulent filing of Plaintiffs' Form 1099s;

j.      An award equal to the greater of $5,000 or the sum of any actual damages sustained by each Plaintiff and each Tax Fraud Class member as a result of such filing, the costs of this action, and reasonable attorneys' fees.

k.      An award of pre-judgment and post-judgment interest;

l.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.      Such other and further relief as this Court deems just and proper.

Respectfully submitted this 3rd day of March, 2017.

/s/ Gary M. Kramer
Gary M. Kramer
1465 Kelly Johnson Blvd, Suite 210
Colorado Springs, CO  80920
Tel:  719-694-2783
Fax:  719-452-3622
Email:  gary@garykramerlaw.com
Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of March, 2017, I electronically filed the foregoing Complaint with the Clerk of the Court using the Court's CM/ECF system.

*/s/ Gary M. Kramer*
Gary M. Kramer